We are here with a request of the court to reverse Mr. Milan's conviction and send him back for dismissal by the trial court. As it is our contention that the trial court abused its discretion and the decision to convict Mr. Milan was clearly erroneous. Now, the standard that Mr. Milan was convicted under is somewhat imprecise since the judge has never issued a written order pursuant to the conviction date of the 11th or the 10th of November, 2005. There wasn't a judgment issued before the conviction that is not subject to this appeal, which was the 4th of November, 2005. Did the judge ever make a finding as to what statement was made that he found to be contemptuous, exactly what was said? Your Honor, in my review of the record, he did not make such a finding. He merely found that the contact with the jurors in and of itself was disturbing and contemptuous. As the government will argue, the standard that they will use is that he misbehaved, and I believe the government did quote the court on this. It is in the record. The court did say that he found that Mr. Milan had misbehaved, that that was near enough to the presence of the court, and found also that that had actually obstructed the administration of justice. Counsel, let me just interrupt for a moment. I think this is a very close case, at least speaking from my perspective. When I look at the Smith case, and it seems to hold sufficient that he knowingly and willingly targeted the jurors. I mean, he said, where are the jurors? And then he made his statements. What is your response to that? Well, Your Honor, first of all, the Smith case did say a juror. And in this case, the contact came before anyone was a juror. The panel had just arrived, the ordeals had not begun. I mean, he spoke to them all. Yes. But as Smith said, the mere contact of a juror to a juror, the mere talking to a juror without more is not in itself contemptuous.  And as I said, I think the jury was overheard. I believe was the fine. Right. Now, that's different. I mean, what Judge Nelson's pointing out is there's no doubt that Mr. Milan was talking to the jury panel. He wasn't just overheard. So does that matter? It would, Your Honor, if that was a juror that Mr. Milan had been talking to. In other words, had there been, in our view, a clear existing order. In Smith, Smith was in the courtroom when the judge admonished the seated jury. And he spoke to them on the outside. Clearly, the court considered whether that was his comment, his general comment. I think it was communistic tax laws don't support communistic tax laws. Could have been intended to influence the jury. That was the consideration of the court in Smith. Well, let's look at this one. As I understand it, there were two statements. One was you guys get to decide the law. The second one is you are the jury. You have to decide. Now, I don't know if everybody takes this as a statement that the jury nullification. But looking at the statements alone, if I understand the rule, it has to have an influence or tend to influence the jury. Is that correct? That is correct, Your Honor. What did the judge find on the tendency to influence the jury? He did not make a specific finding. What the judge said was that it caused him to have sidebars. I'm talking about the jury. I know the judge. To you and me and to the judge and to court people, it was an intent to speak of nullification. But even though the words don't say that, that's what the judge said. But from the jury's standpoint, was there any finding that this would tend to influence the jury? No, Your Honor. To the contrary, the court became aware of the comments at about 2.50 in the afternoon. The jury was seated at 4.30. In that little more than an hour's time at sidebar, eight jurors were examined that supposedly heard Mr. Milan. The two that testified, whose comments you have referred to, were presented as witnesses by the government. They, the Miss, I can't remember her name. She has a contempt hearing later on. The female juror said that he had said, is that the jury? She had overheard someone say, is that the jury? She looked over and he said, that as Mr. Milan is alleged to have said, that you get to make the law, which I believe is the most damning statement, and then you get to decide. Don't let anyone tell you how to decide. The other witness testified that he did not hear that first statement. What he heard was, you're the jury. Don't let anyone tell you how to vote, or words to that effect. So if, whether or not that had a tendency to influence the judge, I think is negated when you say, influence the jury. Excuse me. I think it's negated when you know that the judge actually examined the jurors, these jurors. I don't think that makes a difference. It does only to the extent that it influenced the jury. I'm sorry. I think you're right. The first witness, that is the one who, the female juror, said that she thought he was enough. She had disregarded him, and she may have even been the one who said, if he were testifying, I would discount what he was testifying to. Well, what is the standard here? I mean, does there have to be notice in advance, or at what level of sort of outrageousness is, does the statute recognize that anybody would realize that this was an obstruction of justice? Your Honor, let me preface my response by saying I feel a little bit like the punter who's now called upon to be the quarterback. I picked up this case for argument, and I don't know how I might have argued the elements of 401, but it seems to me that the elements of 401 as described by the statute are misbehavior of a person near the presence of the court and as to obstruct the administration of justice with a requisite intent, which is not defined, either in this case or in the government's brief. But I think that comes very nearly the same as the clear and convincing test that Brandenburg first enunciated. That is that the disruption or the obstruction of the administration of justice can't be merely speculative. It can't. It needs to be imminent. But you're essentially arguing there doesn't necessarily have to be notice and there doesn't necessarily have to be specific intent, but the actual interference has to be imminent and obvious. Is that essentially what you're saying? That is exactly what I'm saying. So your argument is not a specific intent crime. It's a general intent crime. Well, it's a slippery slope, Your Honor, because I think having reviewed the record and the law, that I don't believe that there's any correlation in the cases as to what kind of intent had to be there. I think if you're talking about a clear and convincing act or a misbehavior so as to obstruct justice, that must be, I would think, a general intent crime. However, in the other standard, that is, whether or not you willfully disobeyed an existing order with the intent to influence a specific case, then you're talking about, obviously, a specific intent crime would be my opinion. Now, the ---- Do you want to reserve any time? Because you're almost out. I would like to reserve another moment. Okay. Thank you very much. Good morning. Let me ask you my worst question first. Doesn't it matter what he said and doesn't ---- without a finding as to which of these two things he said, do you think it makes no difference which one is true and which one is false? It does not. And why is that? Because the standard here is whether the defendant intended to improperly influence the jury. Well, what's improper about telling a jury that you decide? Improper is context-driven. What he said to them, which Judge Dawson found on page 69, was that the ---- and it's the implicit in there. What's that is that the comment to the jury about you get to decide the law. But that's what I'm trying to say. One of the witnesses said he said that and the other one said he didn't say that. The other one ---- Or didn't say he said that. Let's put it that way. The other one said you get to decide for yourself. Right. That's the second one. Right. Now, did that mean that he didn't quite hear everything and that was you get to decide the law for yourself or the facts for yourself? But I'm pointing out that there was no finding. So I'm asking you, does it make a difference? Let's suppose that he actually said the second thing. Would you be up here arguing that that was necessarily contemptuous and therefore sanctionable as a crime? Not as strongly as the first. All right. But we have no finding. I may refer you to Excerpt of Record 69. Okay. Where the court begins. He says the question must be asked. Why did the defendant do what he did? It's very apparent the reason he did what he did is that he was aware that it is the sole prerogative of the court to instruct the jury as to the law applicable to the case and is the duty of the jury to follow the instructions of the law. Mr. Milan was at least sufficiently familiar with the jury system in the process to realize that no one would tell them such a thing in the process of the trial. So you think there was an implicit finding, essentially. Exactly. And he directly covered that finding. Well, let me ask you this. I mean, we're looking at jurors, not the judge. You know, I know the judge knew he was trying to get across jury nullification. But let's look at this. Let's look at the case. You guys get to decide the law. Now, doesn't, couldn't that not mean that you decide if he's guilty or not and that the law is he's guilty? I mean, this is not a straight-out statement for, without knowing what all the legal people know. And let's look at the other one. You are the jury. You have to decide. Don't let anyone decide for you. Is that contemptuous? Your question. Is that telling the jury something that they shouldn't do? It depends on the context in which that statement is made. Judge Dawson found that the context of this case was a tax protester case where their very fundamental defense of the defense was the law is not what the court says it is. The law is what we tell you what it is. This was just, the trial hadn't started. We don't know what the defense was. I'm very familiar with Schiff. I've had a case involving him, and he's nut. We know that. But he's a rich nut because people fall for it. But it isn't what you think. It isn't what the judge thinks. It is, to me, what does the average jury think when they hear something like that? And I think there's a good reason to say the average juror would feel this is a innocuous statement. And as one of the jurors said, he's a nut. And isn't it part, and my question is, isn't it part of the proof that you have to show that regardless of intent, that the statement made had the tendency to influence the jury? Yes. Because in order for the statement to be misconduct, it had to be material. To be material, it has to intend to influence the jury. It doesn't have to actually. I know, tend. And I want to find out where the tend is here in this case. Excuse me, please. Where is the tend in these languages? The tend to influence. The intent to influence and the tendency are intertwined and they're context-driven. I respectfully disagree with you. Although the court wants you to. On the facts, although the jury had not been seated and the defense had not made the opening statement, the court unequivocally knew the defense because motions had been filed. Arguments had been made. This nut shift has been a thousand years. But this was a tendency to influence the judge. This was a tendency to influence the jury. And it seems to me you have to look at the words first. Now when you, you know, in the other cases there was certainly a very clearly an intent and words that would, that was to influence the jury. And I'm bothered by the words here as not being words that have, are proved to have the tendency. I think you have to look at the words themselves. I want to address that squarely. Let's step back to the defendant and who he is. Whom the judge found. The defendant was a disciple, a follower, an advocate of nut bag shifts. All right. But that all goes to his intent, which we're sort of washing out. I mean, we're talking at this juncture, as Judge Bright's suggesting, sort of in the abstract. It doesn't matter who he is as to the tendency to influence the jury. You have to, the tendency is a basic monitor. Why does he have the totality of the circumstances? And there are two important circumstances here. Number one, well actually three. Number one, who the defendant was and what he was trying to accomplish. What he knew. He knew that his defense, the defense of this following of shift was the law, the tax laws are illegal. You don't have to follow the court's instructions on them. Number two, that the defense in this case would be the law is illegal. You don't have to follow it. If somebody had put an editorial in a newspaper that day, or even was stood with a sign outside the cross street from the courtroom, saying jury nullification is a good thing, no one can stop you from doing it, would that be contempt? There's a line drawn between the two. With respect to editorials that are addressing a judicial proceeding, this Court has always been robust in protecting First Amendment speech. But in picketing, in lines right outside the courthouse, the Court has drawn a line there in Cox v. Louisiana. And that's discussed in the Turney v. Pugh case that you asked us to brief. When the intent is to improperly influence or communicate with the jury to threaten the jury's fairness and impartiality. Well, he certainly wasn't threatening the jury's fairness and impartiality. What he was doing essentially was telling them something that was actually factually true, i.e., as a matter of fact, if the jury engages in nullification, nothing's going to happen. But that we tell the jurors the opposite of and that we don't encourage. He wasn't trying to influence the jury one way or the other, or at least he wasn't going to succeed. That wasn't the message. The message wasn't support my candidate, so to speak. It was you can decide the law. Even if you take it to be that, you can decide the law. That's not the judicial view of what the jury can do, but it's a factual view. And it's not what the jury constructed in Instruction No. 1 or No. 2 at the close of every case from the model instruction. The model instruction says you have a duty to follow the law whether you like it or not. Counsel, since your time is running out, I get your point about following the law. I'd like to have your answer to what evidence is there that Milan's statements actually obstructed justice, other than causing the judge to have to interview the jurors and a delay in the trial. Is that what you say amounted to, obstruction of justice? Yes. There's two separate concepts. Was there an actual obstruction and was there an intent to obstruct? The intent goes back to the earlier questions about materiality. Did they tend to? But that's separate and apart from the actual. The actual here is the delay the court engaged in. The problems the court perceived were nearly declared a mistrial at that early stage. Well, that can't be right because, I mean, if he had said something that we all agree wouldn't be an obstruction of justice but the judge chose to investigate it, that couldn't turn it into an obstruction of justice. Well, he couldn't. The foundation to that, though, was the misstatement of material. Did it have a tendency to influence the jury? Well, that's true. But all I'm pointing out is that the fact that the judge chose to take the time to investigate it can't prove the obstruction. If the judge in this case does not have the power to address that type of misconduct Well, he has the power, but he doesn't necessarily have the power to call that a criminal act then because he chose to investigate it. If he cannot go through and investigate and cannot impose a punishment then you have these type of conducts that essentially go unaddressed that can continue in the court house. All I'm trying to say is it seems to me that you have to prove that the conduct obstructed justice not that his investigation into the conduct proves the obstruction of justice. And I submit that it's really, you need to bifurcate those two issues. You need to look at what was the conduct, did it have a tendency, and then saying yes or no. Then if the court acts upon a conduct that meets the standard of materiality and then the court engages in the time and the effort, that itself is the obstruction. I have one last question and then we're going to ask you to sit down because we are trying to be efficient about our time today. The Thoreen case seems to say, quoting Seale, Thoreen and Seale, which say, an absence of any warning that borderline conduct is regarded as consummation could be fatal to a contempt citation. Would you regard this as borderline conduct of the kind that there at least has to be a prior order for? No, because. Do you agree that that's the standard, first of all? No, because that's the standard for 401 subparagraph 3. But this is in Thoreen, which was not a subparagraph 3 case. It's not a subparagraph 1 case. I thought it was. Attorney v. Pugh, to my recollection, Attorney v. Pugh answers that question that you addressed. But Thoreen was a 401 case. I could be mistaken on my recollection of that. Because it says right at the beginning that it is. I stand corrected. But the guiding case that I submit to you is Turney v. Pugh. Because there it says that in cases where there's an intent to improperly communicate with the jury to influence them, that's a very narrow line of cases where the conduct is presumptively prejudicial. And we go back to it's self-noticing that it's wrong. Right. So it's in that category. Right. It's clearly a self-noticing. You say this is sufficiently, obviously, contravening that it's self-noticing. Absolutely. Because in the context of the case, it must be viewed as a minor advance to the defense. And the fact that we're having trouble with it ourselves doesn't give you any pause in that regard. With all due respect, I think you're wrong. And that's why I think the case clearly supports under Turney and those principles, if we bifurcate materiality and we say, is it materiality? Yes, it is. Then we go, now, did that then affect the court's timing? Okay. Thank you very much, counsel. Counsel, you have a minute or so. I'd urge the Court to reject the government's invitation to go outside of the record of the case and instead concentrate directly on what this defendant knew and what the record shows about his conduct. The only statement in the record anywhere of what he believed about the tax laws is his own statement on the 11th or, excuse me, on the 10th of November when he was convicted, and he did say he sympathized with Schiff and the other defendants. He said no more. He never said that he disbelieved in the Federal tax laws, and he never said he sympathized them because they were being prosecuted for tax laws. That's the only record. And I would say that Smith should guide the Court in this way. What we have here is a person who may have been a careless, loudmouthed, expressing his own opinion in the vicinity of the juror. In Smith, he said don't go with these communistic tax laws. In this case, he said you're the jury. You get to decide. Don't let anyone decide for you. That, without more, does not make criminal content. That was the holding in Smith, and I'd urge the Court to make it the holding in this case. Thank you very much. Thank you, counsel. The case of United States v. Milan is submitted. And we thank counsel for a useful argument. United States v. Benz.
judges: Bright , D.W. Nelson, Berzon